UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X

JOHN WALDORF,

        Plaintiff,

  -against-

LIBERTY MAINTENANCE, INC., and
MANUEL FRANGOS, individually and
as an owner and President of Liberty
Maintenance, Inc.

        Defendants.
-----------------------------------------------------X

**05 Civ. 2557 (RJH)**

**AMENDED COMPLAINT**

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY**



RECEIVED
MAR 2 1 2005
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff, John Waldorf, by his attorneys, Kaiser Saurborn & Mair, P.C., as and for his

Complaint against defendants, alleges as follows:

## PARTIES, JURISDICTION, AND NATURE OF ACTION

1.    Plaintiff, John Waldorf ("Waldorf" or "plaintiff"), is a citizen of the State of New Jersey,

residing in Lalifon, New Jersey.

2.    Defendant, Liberty Maintenance, Inc. ("Liberty" or "the Company"), is an Ohio

corporation duly authorized to conduct business in New York State, whose headquarters

are located in Youngstown, Ohio.

3.    Defendant, Manuel Frangos ("Frangos"), is President and an owner of Liberty and, upon

information and belief, is a resident of Ohio.

4.    Defendants terminated plaintiff as a result of his age and in retaliation for his good faith

objections to his employer's insistence that he under report the Company's reporting of

union time to the Port Authority of New York and New Jersey ("PANYNJ").

5.    Defendants discriminated against plaintiff in violation of New York State and New York

City anti-discrimination laws and retaliated against him, pursuant to New Jersey's

Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-3, 34:19-8.  This is an

action to recover compensatory and punitive damages for defendants' violations of New

York State and New York City anti-discrimination statutes and CEPA.

6.      The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

7.      Pursuant to 28 U.S.C. § 1332(a)(1), this Court has jurisdiction over this action.

8.      Venue in this Court is proper pursuant to 28 U.S.C. §1391(e) in that the defendants

        transact business within the City of New York.  The jurisdiction of this Court is also

        founded upon the legal principles of pendant jurisdiction.

9.      Defendants also maintain and plaintiff worked out of an office in Elizabeth, New Jersey.

10.     Defendants also maintain and plaintiff worked out of an office in the Bronx, New York.

## BACKGROUND
### I.
### WALDORF'S EMPLOYMENT

11.     In or about October, 2001, Mr. Waldorf, then 49 years old, began working for Liberty as

        the Project Manager on the Goethals Bridge Project for the Port Authority of New York

        and New Jersey ("PANYNJ").

12.     At all relevant times herein, defendants controlled and/or substantially influenced the

        terms and conditions of plaintiff's employment, including but not limited to termination.

13.     Defendants were responsible for maintaining a work environment free of unlawful

        discrimination, including age discrimination.

14.     Mr. Waldorf's job responsibilities, which he performed in exemplary fashion, included,

2

for the Goethals Bridge Project, but were not limited to, the following:

    a.    Reporting of union time to the main office;

    b.    Job scheduling;

    c.    Job costing to partners;

    d.    Preparation of Change Order estimates;

    e.    Purchasing;

    f.    Quality Assurance Reporting;

    g.    Responsible for Health and Safety Reporting;

    h.    Submission of all drawings and specifications to the Port Authority and their consultants;

    i.    Payment preparation;

    j.    Conduct of Progress meetings with PANYNJ, their consultants and subcontractors; and

    k.    Approval/analysis of subcontractor payments.

15.    In or about November, 2003, Mr. Waldorf commenced working on the Madison Avenue project as Project Manager for Liberty, while continuing to work on the Goethals Bridge project.

16.    Mr. Waldorf's job responsibilities, which he performed in exemplary fashion, for the Madison Avenue project, included, but were not limited to, the following:

    a.    Reporting of union time to the main office;

    b.    Job scheduling;

    c.    Preparation of Change Order estimates;

    d.    Purchasing;

    e.    Quality Assurance Reporting;

    f.    Responsible for Health & Safety Reporting;

    g.    Submittal of all drawings & specifications to the New York City Department of Transportation and its consultants;

    h.    Payment preparation; and

    i.    Conduct of Progress meetings with NYCDOT, their consultants and inspectors.

17.    On or abut March 22, 2004, problems concerning the reporting of the hours ensued.

18.    John Frangos, owner of Liberty, complained to Waldorf about plaintiff's billing of hours.

19.    Waldorf replied that he was properly reporting the hours per the requirements of the

union contract, as he has done on every project on which he had worked, including the
Goethal's Bridge Project.

20. John Frangos became agitated and told Waldorf that the Madison Avenue Bridge Project
was not like the Goethals Bridge job, and that the time will be reported differently
because the men "made too much money" on the Goethals job.

21. Waldorf objected to this and explained to Frangos that the two projects were governed by
the same Local Union 806 contract.

22. Waldorf also indicated to Frangos that the time from 7:00 am until 8:00 am was to be
paid at the overtime rate per the union contract under the hours worked/hours paid part of
the contract.

23. Frangos told Waldorf that he would pay this hour at regular time rate and not the
overtime rate.

24. Waldorf objected to this and indicated to Frangos that if the men ate their lunch up on the
bridge that per union contract they were to be paid for this time.

25. Frangos told Waldorf not to pay the men for this time.

26. Waldorf objected to this and also reminded Frangos that all time after 2:30 PM was to be
paid at the overtime rate per the Union contract.

27. Again, Frangos told Waldorf to ignore the Union contract and submit union time as
Frangos directed him.

28. Waldorf objected once more, and continued reporting the time correctly, over Frangos'
objections.

29. Liberty insisted that Waldorf violate the Union contract in order to save the Company

4

money that they were legally required to pay out pursuant to the union contract.

30. When it was clear that plaintiff would not participate in illegal reporting of union time, Waldorf noticed that the time sheets were apparently being changed, as was evidenced by the discrepancies between the hours reported on Waldorf's time sheet and the hours on the actual paycheck, submitted by Christine Kalikatzaros.

31. In or about March, 2004, Liberty stripped Mr. Waldorf of his responsibility to report union time.

32. The reason for this change, according to Liberty, was that the Company did not want the reporting of union time to be done in the same manner as the Goethals project, for which Mr. Waldorf scrupulously tracked and reported time, pursuant to the Union contract.

33. The payroll secretary ultimately advised plaintiff that Ms. Kalikatzaros was directed by John Frangos to change the time sheets so that the overtime owed to employees of the Company was treated as straight work time.

34. Defendants terminated Mr. Waldorf in retaliation for his continued complaints concerning the false reporting of union time, in violation of the Conscientious Employee Protection Act.

II.

## PLAINTIFF'S DISCRIMINATION CLAIM

35. On or about December 14, 2004, defendant Frangos notified Mr. Waldorf of his termination and that Liberty was replacing him with a younger worker for less pay.

36. Defendant Liberty, in a letter dated February 2, 2005 by its counsel, Stuart A. Strasfeld [Attached hereto as Exhibit "A"], stated that "Mr. Waldorf was laid off by Liberty for

lack of work, not because of his age."

37.   Defendants' stated reason for Mr. Waldorf's termination is demonstrably false and pretextual, because, in truth, there was not a lack of work as Liberty had just gotten a $34,000,000 job at the Terrazzo Bridge as of October, 2004 and had just started a job at the Tri Borough Bridge in February, 2004 in the amount of $17,000,000.

38.   Defendants also state, via its representative, Mr. Strasfeld, in its correspondence of February 2, 2005, that Mr. Waldorf was not the project manager, but rather "the employee on site of the Madison Avenue project responsible for expediting necessary paperwork and documentation for the project to operate" and he was "laid off because the [Madison Avenue] project was complete."

39.   Again, defendants' description of Mr. Waldorf's job responsibilities and job title is demonstrably false.

40.   Every letter that Mr. Waldorf ever wrote to the New York City Department of Transportation ("NYCDOT"), the US Coast Guard, or any consulting engineer for the Madison Avenue Bridge job identified Waldorf as the "Construction Manager."

41.   On the Goethals Bridge job, all correspondence identified Waldorf as the "Project Manager" and the initial paper work submitted the NYCDOT identified Waldorf as the "Project Manager."

42.   As all public works contracts required that the contractor identify, in writing, who the "Project Manager" was for both the Madison Ave and the Goethals Bridge projects; Liberty identified  Mr. Waldorf as the "Project Manager" for both jobs.

43.   Moreover, Liberty routinely identified Mr. Waldorf as  "Project Manager" in bid

contracts.

44.     Defendants terminated plaintiff because of his age and replaced him with a younger

employee.

45.     Upon information and belief, defendants knew that its actions concerning plaintiff

violated New York State and City civil rights laws.

46.     Upon information and belief, defendants acted maliciously and/or in reckless disregard of

plaintiff's civil rights.

47.     Defendant Liberty's statements concerning the reasons for plaintiff's termination are

false and thus evidence a pretext for discrimination.

## FIRST CAUSE OF ACTION

48.     Plaintiff repeats and realleges each and every allegation contained in paragraphs "1"

through "47" of the complaint with the same force and effect as if separately alleged and

reiterated herein.

49.     Defendants discriminated against plaintiff in the terms and conditions of his employment

because of his age in violation of New York State Executive Law § 296.

50.     As a result, plaintiff suffered damages for lost past and future earnings, other employment

benefits, and emotional injuries, in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

51.     Plaintiff repeats and realleges each and every allegation contained in paragraphs "1"

through "47", and "49" of the complaint with the same force and effect as if separately

alleged and reiterated herein.

52.     Defendants discriminated against plaintiff in the terms and conditions of his employment

53. As a result, defendants have caused plaintiff to suffer damages, including lost past and future earnings, other employment benefits, and emotional injuries in an amount to be determined at trial.

### THIRD CAUSE OF ACTION

54. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "47", and "49" and "52" of the complaint with the same force and effect as if separately alleged and reiterated herein.

55. Defendants terminated plaintiff in violation of CEPA, N.J.S.A. 34:19-3, 34:19-8.

56. As a result, defendants have caused plaintiff to suffer damages, including lost past and future earnings, other employment benefits, and emotional injuries in an amount to be determined at trial.


**WHEREFORE**, plaintiff demands judgment against defendants as follows:

(i)     On the First Cause of Action, actual damages against defendants in an amount to be determined at trial;

(ii)    On the Second Cause of Action, actual and punitive damages against defendants in an amount to be determined at trial;

(iii)   On the Third Cause of Action, actual and punitive damages against defendants in an amount to be determined at trial;

(iv)    Statutory attorney's fees pursuant to §8-502 of the New York City Administrative Code;

(v)     Disbursements and other costs; and

(vi)    For such other relief which the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by Jury.

Dated: New York, New York
March 17, 2005

KAISER SAURBORN & MAIR, P.C.

By: _____
William H. Kaiser, Esq.

William H. Kaiser, Esq.
Attorneys for Plaintiff
20 Exchange Place, 43rd Floor
New York, New York 10005
(212) 338-9100

9

# EXHIBIT A

# ROTH, BLAIR, ROBERTS, STRASFELD & LODGE

### A LEGAL PROFESSIONAL ASSOCIATION

DANIEL B. ROTH
RICHARD B. BLAIR
JAMES E. "TED" ROBERTS
STUART A. STRASFELD
THOMAS J. LODGE
DAVID S. BARBEE
CHRISTOPHER P. LACICH*
SCOTT R. DeBONIS
JOSEPH C. BISHARA**
DAVID M. MOORE
WAYNE P. REID*
JOHN N. ZOMOIDA, JR.

\*ALSO LICENSED TO PRACTICE IN PA
\*\*ALSO LICENSED TO PRACTICE IN FL

CITY CENTRE ONE
100 FEDERAL PLAZA EAST, SUITE 600
YOUNGSTOWN, OHIO 44503-1893
TELEPHONE (330) 744-5211
FACSIMILE (330) 744-3184

OSCAR A. STEPHENS
1888-1975
BENJAMIN F. ROTH
1894-1978
OF COUNSEL:
HERBERT H. PRIDHAM
GLENN J. SCHWARTZ
RETIRED:
EDWARD ROBERTS
JERRY O. STEPHENS

COLUMBIANA COUNTY OFFICE
11 SOUTH MAIN STREET
COLUMBIANA, OHIO 44408-1306
TELEPHONE (330) 482-3825
FAX (330) 482-0706

February 2, 2005

William H. Kaiser, Esq.
KAISER, SAURBORN & MAIR, P.C.
20 Exchange Place
New York, NY 10005

RE:     *John Waldorf v. Liberty Maintenance, Inc.*

Dear Mr. Kaiser:

By way of introduction, please know that we represent Liberty Maintenance, Inc. ("Liberty") and Emanouel Frangos in the above matter and we have been asked to reply to your letter of January 14, 2005 regarding the claims of your client, John Waldorf.

Mr. Waldorf was laid off by Liberty for lack of work, not because of his age. When the Madison Avenue project was completed, his employment was completed. At the peak of that project, approximately 36 employees were on site. In August and September, 2004, the number dropped to 10-15 employees. By October 2004, the number of employees was down to 5-10. From October 31 through approximately November 14, 2004, Mr. Waldorf was employed with two other personnel to tie up loose ends of the project. By late November 2004, the project was 100% complete, and Mr. Waldorf was the only employee left on the payroll of the Madison Avenue project. On December 14, 2004, Mr. Waldorf was laid off because the project was complete.

To clarify, Mr. Waldorf was not the project manager. He was the employee on site of the Madison Avenue project responsible for expediting necessary paperwork and documentation for the project to operate. Payroll for all projects has been processed in the Ohio main office of Liberty, except for the Goethals project.

We do not believe that the age discrimination claims have merit. Further, due to your client's failure to return the personal property, any offer of severance is hereby withdrawn.

Very truly yours,

ROTH, BLAIR, ROBERTS, STRASFELD & LODGE

Stuart A. Strasfeld

SAS/plm

# CERTIFICATE OF SERVICE

Paul M. Filipanics certifies, pursuant to 28 U.S.C. §1746, that on March 17, 2005 I served the within one copy of the **Amended Complaint** by first class mail, by depositing one true copy enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York, addressed to:

Alan M. Pollack, Esq.
Robinson Brog Leinwand Greene Genovese & Gluck, P.C.
1345 Avenue of the Americas
New York, New York 10105-0143

Dated: New York, New York
      March 17, 2005

Paul Michele Filipanics