UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------
JOHN WALDORF,

                  Plaintiff,

-against-

LIBERTY MAINTENANCE, INC. and
MANUEL FRANGOS, individually and as an owner
and President of Liberty Maintenance, Inc.,

                  Defendants.
------------------------------------------------------------------

05 CV 2557
(RJH)

**ORAL ARGUMENT REQUESTED**

### DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Local Rule 56.1 of the Southern District of New York, Defendants Liberty Maintenance, Inc. ("Liberty") and Manuel Frangos ("Manny"), individually and as an owner and president of Liberty Maintenance, Inc., respectfully submit this Statement of Material Facts as to which there is no genuine issue to be tried.

1. Defendant Liberty is an Ohio corporation duly authorized to conduct business in New York. (Second Amended Complaint, *Id.*, ¶ 2, Ennis Aff. Ex. A;[1] *see also*, Defendant's Answer ¶2, Ennis Aff. Ex. B.)

2. Liberty performs bridge painting and related work pursuant to contract. (EBT Tr. John Waldorf, p. 36, l. 3, Ennis Aff. Ex. C.)

3. In October 2001, Plaintiff was hired as a construction manager for Dynamic Painting. Along with its tri-venture partners, Liberty and Corcon Industrial Painting, Dynamic

---

[1] The cited exhibits (noted as "Ex. __"), are attached to the Affidavit of Felicia S. Ennis ("Ennis Aff."), filed herewith.

was performing work on the Goethals Bridge ("Goethals Project.") (*Id.*, pp., 10 - 12.)

4. Plaintiff was 49 years old when he began working for Dynamic on the Goethals Project. (Second Amended Complaint, ¶ 17, Ennis Aff. A.)

5. According to Plaintiff's deposition testimony, his job duties in connection with the Goethals Project consisted of reporting to the project owner, taking care of correspondence and running the office. (EBT Tr. John Waldorf, p. 11, l. 5-10, Ennis Aff. Ex. C.)

6. Plaintiff's supervisor on the Goethals Project was John Frangos. (*Id.*, p. 34, l. 9-14.)

7. Liberty is owned by John Frangos, along with his wife, Nomiki Frangos. (EBT Tr. of Emanouel "Manny" Frangos, p. 40, l. 12-20, Ennis Aff. Ex. D.)

8. Manny Frangos, John Frangos' son, is the President of Liberty. (*Id.*, p. 7, l. 20; p. 40, l. 6-11.)

9. At the time that Liberty and its tri-venture partners were performing work on the Goethals Project, Manny Frangos, was working out-of-state on other projects for Liberty. (*Id.*, 36, l. 24 – p. 37, l. 5.)

10. On July 10, 2002, while still working on the Goethals Project, Plaintiff was hired by Liberty. (Waldorf EBT Tr., p. 23, Ennis Aff. Ex. C; *see also*, Plaintiff's Employment Application, Ennis Aff. Ex. E.)

11. Plaintiff was hired by Liberty because Dynamic was having financial difficulties. (Waldorf EBT Tr., p. 82, l. 13-16, Ennis Aff. Ex. C.)

12. In the summer of 2003, Plaintiff became a member of the Structural Steel Painters Union, Local 806. (*Id.* p. 43, l. 14 – p. 44, l. 4.)

13. Plaintiff joined Local 806 as a journeyman, although he did not perform any

journeyman work. (*Id.* p. 84.)

14. Plaintiff joined the union in order to receive better retirement and health benefits. (*Id.* pp. 44-45.)

15. Plaintiff was paid a journeyman's rate, which included an hourly wage rate of approximately $42.50, plus an additional $20-$30 per hour for benefits. (*Id.* p. 85, l. 4-17.)

16. In November 2003, Plaintiff began working on a project being performed on the Madison Avenue Bridge ("Madison Avenue Project"), located in New York City. (*Id.*, p. 26, l. 9-12.)

17. The Madison Avenue Project was a joint venture between Liberty and Corcon ("Liberty/Corcon JV.") (*Id.*, p. 27, l. 12-22.)

18. During his employment on the Madison Avenue Project, Plaintiff was employed by the Liberty/Corcon JV. (*See, e.g.,* Liberty/Corcon Payroll records for Madison Avenue Project for 10/04, 11/04 and 12/04, including cancelled payroll checks for John Waldorf, Ennis Aff. Ex. F; *see also,* Affidavit of Liberty President Emanouel Frangos dated July 15, 2005, ¶¶5-8, Ennis Aff. Ex. G; Madison Avenue Bid Award dated January 8, 2003 and Contract No. HBX644P, containing bond information for the Liberty/Corcon JV, Ennis Aff. Ex. H.)

19. At his deposition, Mr. Waldorf testified that at he was hired by Liberty/Corcon to work on the Madison Avenue project. (Waldorf EBT Tr., p. 85, l. 18-23, Ennis Aff. Ex. C.)

20. Plaintiff's job duties for the Madison Avenue Project were essentially the same as his duties on the Goethal's Project. (*Id.*, p. 30, l. 16-20.)

21. Plaintiff's supervisors on the Madison Avenue Project were John Frangos and Manny Frangos. (*Id.*, p. 34, l. 18-20.)

22. The management of the work done on the Madison Avenue Project was

performed by Manny Frangos along with other members of the Frangos family, including his father, John Frangos, and his first cousin. (EBT Tr. Manny Frangos, p. 71, l. 22 – p. 72, l. 11, Ennis Aff. Ex. D.)

23. Plaintiff's job on the Madison Avenue Project was to expedite paperwork. (*Id.*, p. 72, l.16-23.)

24. Plaintiff's work on the Goethals and Madison Avenue Projects was not performed pursuant to any employment contract. (Waldorf EBT Tr., p. 42, l. 12 – p.43, l. 13, Ennis Aff. Ex. C.)

25. Work on the Madison Avenue Project was substantially completed as of November 23, 2004. (Substantial Completion Letter dated November 24, 2003, Ennis Aff. Ex. I.)

26. During his employment on the Goethals and Madison Avenue Projects, Plaintiff was given a laptop computer to use by Liberty. Plaintiff kept e-mail files and correspondence on this computer. (Waldorf EBT Tr., p. 69, l. 25 – p.70, l. 6, Ennis Aff. Ex. C.)

27. Some of these e-mails, which were not previously produced by Plaintiff, were retrieved by Defendants from this laptop. (Ennis Aff. Ex. J.) Defendants used data forensics services provided by Protiviti, Inc. to retrieve these e-mails. (*See* Certification of Sankara S. Shanmugam, Ennis Aff. Ex. K.)

28. Lou Lyras is the owner of Corcon and Plaintiff and Mr. Lyras are friends. (Waldorf EBT Tr., p. 55, l. 25 – p.56, Ennis Aff. Ex. C.)

29. Plaintiff exchanged personal e-mail correspondence with Mr. Lyras. (*Id.*, p. 123.)

30. In an e-mail retrieved by Defendants dated December 6, 2004, Plaintiff acknowledged to Lou Lyras that his employment with Liberty was ending. (*See* 12/6/04 e-mail

from Plaintiff to Lou Lyras, Bates Stamp No. LMI0185, Ennis Aff. Ex. J.) Bearing the subject line "Writing on the Wall," Plaintiff stated in the e-mail that the Madison Avenue Project had been completed and that he had not been offered any work by Liberty on any other projects. (*Id.*) Plaintiff asked Mr. Lyras whether he was aware of anyone who was looking to hire someone in his position. (*Id.*)

31. Plaintiff had been actively pursuing other employment opportunities since as early as July 2004. For example, in an e-mail dated July 30, 2004, Plaintiff refers to the terms of an employment agreement which he had been negotiating with Ahern Painting, Inc. (7/30/04 e-mail from Plaintiff to "Kieran@aherncontractors.com," Bates Stamp No. LMI0178, Ennis Aff. Ex. J.)

32. A draft of an Employment Contract between Plaintiff and Ahern was also retrieved from Plaintiff's laptop. (Employment Contract, Bates Stamp No. LMI0179-81, Ennis Aff. Ex. J.)

33. A follow-up e-mail was sent by Plaintiff to Ahern on August 18, 2004. (8/18/04 e-mail from Plaintiff to "Kieran@aherncontractors.com" and "liam@aherncontractors.com," Bates Stamp No. LMI0182, Ennis Aff. Ex. J.)

34. By letter and e-mail correspondence dated December 20, 2004, Plaintiff was formally advised by Manny Frangos that he was being laid off as of that date. (*See* 12/20/04 Frangos Letter and 12/20/04 e-mail correspondence, collectively annexed to Ennis Aff., Ex. L.)

35. Pursuant to the 12/20/04 letter of Manny Frangos, Plaintiff was being laid off "due to both limited outstanding work and related manpower requirements." (*Id.*; *see also*, 2/2/05 letter from Stuart A. Strasfeld to William H. Kaiser, Ennis Aff. Ex. M.)

36. At his deposition, Manny Frangos testified that Plaintiff was laid off because

Liberty did not have any other projects that required Plaintiff's services as a project manager.[2] (Manny Frangos EBT Tr. p. 42, l. 15 – p. p. 43, l. 2, Ennis Aff. Ex. D.)

37. As Manny Frangos explained, all of Liberty's work was now concentrated in the New York area and as a result, he was able to manage all existing projects without the assistance of any additional project managers, including Plaintiff.[3] (Id., p. 36, l. 14-23; p. 49, l.17 – p. 50, l. 3.)

38. Other workers, including Carlos Araujo, were also laid off following the completion of work on the Madison Avenue Project. (Id., p. 87, l. 12-18.)

39. While Plaintiff contends that there was other available work for him to perform in December 2004 on either the Verrazano Bridge ("Verrazano Project") or the Triborough Bridge ("Triborough Project"), he testified that the Triborough Project had commenced prior to December 2004 and was already fully staffed at the time of his discharge. (Waldorf EBT Tr., p. 76, l. 19 – p. 77, l. 18, Ennis Aff. Ex. C.)

40. Additionally, Plaintiff testified that in December 2004, the Verrazano Project was in the "pre-work phase," and work was not actually scheduled to commence until the spring of 2005. (Id., p. 77, l. 19 – p. 78, l. 4.)

41. Plaintiff was asked to sign an Employment Separation Agreement and General

---

[2] At his deposition, Manny Frangos repeatedly testified that Liberty was not a "title oriented" company. (Manny Frangos EBT Tr. pp. 22-27, Ennis Aff. Ex. D.) Whether Plaintiff referred to himself as either a construction manager or project manager to describe his duties was of no consequence to Liberty. (Id., p. 22, l. 19-25.) Irrespective of his "title," Plaintiff's work on both the Goethals and Madison Avenue Projects was essentially the same and consisted of office-related duties. (See ¶¶ 5; 20, supra.) Plaintiff's work was also supervised by members of the Frangos family on both projects. (See, ¶¶ 6; 21, supra.)

[3] In fact, Liberty is currently involved in only three projects – the Verrazano and Triborough Projects, as well as a project on the Robert Moses causeway. (Manny Frangos EBT Tr. p. 33, l. 14 – p. 34, l. 14, Ennis Aff. Ex. D.) Manny Frangos is the project manager for each of those projects. (Id., p. 36, l. 14-23.)

Release, in exchange for severance pay in the amount of $10,000. (Ennis Aff. Ex. N.)

42. As evidenced by his 12/27/04 e-mail, Plaintiff refused to sign Liberty's Employment Separation Agreement. (*See* 12/27/04 e-mail, Ennis Aff. Ex. O.)

43. In both his 12/20/04 letter and the e-mail, Plaintiff was asked by Mr. Frangos to immediately return all property belonging to Liberty and Liberty/Corcon JV, including the laptop computer, as well as all correspondence and documentation with the Port Authority and NYC DOT in connection with Plaintiff's work on the Madison Avenue and Goethals Bridge Projects. (Ennis Aff., Ex. L.)

44. At his deposition, Plaintiff acknowledged that the laptop was Liberty's property. (Waldorf EBT Tr., p. 88, l. 21-23, Ennis Aff. Ex. C.)

45. Despite this request, Plaintiff continued to use the laptop for his own personal use following his discharge on December 20, 2004. (*Id.*, p. 89, l. 6 – 14.)

46. In addition, Plaintiff used Liberty's laptop computer to provide his attorney with correspondence proprietary to Liberty concerning Liberty's work on the Goethals and Madison Avenue Projects, as well as e-mails between himself and Manny Frangos concerning his discharge. (*Id.*, p. 90.)

47. The laptop was not returned to Liberty until January or February 2005. (*Id.*, p. 88, l. 1-13.)

48. On March 3, 2005, Plaintiff commenced the within action by filing a summons and complaint. (*See* Complaint, Ennis Aff. Ex. P.)

49. On or about May 2, 2005, Plaintiff's attorney produced documents, Bates Stamped #00001-000346, in response to Defendant's Request for Documents. (*See* 5/2/25 Letter from William H. Kaiser, Esq. to Alan M. Pollack, Esq., Ennis Aff. Ex. Q.)

50. These documents included e-mail communications (Ennis Aff. Ex. R), as well as correspondence in connection with Liberty's work on the Goethals and Madison Avenue Projects. (Ennis Aff., Ex. S.) The e-mails produced by Plaintiff did not contain certain e-mails and related documents later retrieved by Defendants from Plaintiff's laptop. (*See* ¶¶ 27-33, *supra*.)

51. Plaintiff testified that he was 52 years old when his employment with Liberty ended. (Waldorf EBT Tr., p. 128, l. 7-9, Ennis Aff. Ex. C.)

52. Plaintiff testified that at that time that his employment ended, Liberty employed other union employees who were his age or older. (*Id.*, p. 128, l. 10-17.)

53. Plaintiff testified that in December 2004, he had conversations with Manny and John Frangos that they were hiring an individual named Chris Polinious as the construction manager to run the Verrazano Bridge Project. (*Id.*, p. 54-55; p. 57, l. 6-18.)

54. Plaintiff never asked John or Manny Frangos why Chris was being hired, and other than the fact that Chris was being hired, does not recall anything further from his conversation with them. (*Id.*, p. 57, l. 24, - p. 58, l. 9.)

55. Plaintiff testified that he was told by another Liberty employee, Nikos Kountizous, that Chris Polinious was being hired for less money to work on the Verrazano Bridge project. (*Id.*, pp. 106-108.)

56. The only way that Plaintiff knew that Chris was being hired for less money was because he was not a member of a union. (*Id.*, p. 108, l. 11-13.)

57. Plaintiff does not know whether Chris Polinious was ever hired. (*Id.*, p. 55, l. 8-18; p. 57, l. 19-23.)

58. At his deposition, when asked the basis for his belief that Liberty had

discriminated against him as a result of his age, Plaintiff testified that he knew that Chris "was much younger than I was and less experienced." (*Id.*, p. 108, l. 14-21.)

59. When asked if there was any other reason for his belief that Liberty had discriminated against him, Plaintiff testified: "That was the main thing. They were hiring somebody that was younger and less experienced." (*Id.*, p. 108, l. 22- p. 109, l. 4.)

60. Plaintiff did not know Chris's age. (*Id.*, p. 114, l. 6-8.)

61. In fact, Manny Frangos testified that Liberty had hired a subcontractor, Chris Pavlidis, to supervise steel work on the Verrazano Project. Liberty's relationship with Mr. Pavlidis lasted only a short period of time and ended when the parties could not come to agreement. (Manny Frangos EBT Tr., p. 32, l. 11-14, Ennis Aff. Ex. D.)

62. As Manny explained, the Verrazano Project was the only project that Liberty had which involved steel work. (*Id.*, p. 69, l. 5-8.) Mr. Pavlidis was hired to manage the steel work that needed to be done. (*Id.*, p. 32, l. 25 – p. 33, l. 6.)

63. Pursuant to records produced by Liberty, Mr. Pavlidis, through his own company, Cinter, Inc., submitted invoices and purchase orders to Liberty for reimbursement of labor and material in connection with the Verrazano Project. (*See, e.g.*, 2/17/05 purchase order, Bates Stamp No. LMI0133; Liberty Schedule of Paid Invoices, Bates Stamp No. LMI0138, Ennis Aff. Ex. T.)

64. Mr. Pavlidis was never employed by Liberty. (Manny Frangos EBT Tr., p. 67, l. 10-12, Ennis Aff. Ex. D.)

65. Manny testified that Mr. Pavlidis was older than his 30's, but was otherwise unsure of his age. (*Id.*, p. 32, l. 19-22.)

66. While Plaintiff's counsel requested, and was granted the opportunity to take the

non-party deposition of Mr. Pavlidis on or before July 31, 2006 (*see* Endorsed Scheduling Order dated 6/16/06 and electronically filed on 7/12/06, Ennis Aff. Exhibit U), Mr. Pavlidis failed to appear for his deposition on July 18, 2006 and Plaintiff's counsel took no further action thereafter.

67. During the period of December, 2004 until approximately mid-April, 2005, Mr. Waldorf was receiving unemployment benefits.(Waldorf EBT Tr. p. 129, l. 9-12, Ennis Aff. Ex. C.)

68. Mr. Waldorf received an offer of employment from Weeks Marine sometime around April 1, 2005. (*Id.*, p. 130, l. 11.)

69. According to Mr. Waldorf, his lost earnings claim was based on the 4-month period that he was out of work. (*Id.*, p. 136, l. 25.)

70. Plaintiff has not sought any professional help as a result of the emotional injury he allegedly suffered in connection with this matter. (*Id.*, p. 148, l. 11-17.)

Dated: August 1, 2006

Respectfully Submitted,

ROBINSON BROG LEINWAND GREENE
GENOVESE & GLUCK P.C.

By: _____
Felicia S. Ennis (FSE-4563)
Alan M. Pollack (AMP-3759)
1345 Avenue of the Americas -31st Floor
New York, New York 10105
(212) 631-6300

Attorneys for Defendants